## BUCHANAN et al v. KANSAS CITY, Appellant.

### Division Two, December 24, 1907.

1. **CONDEMNATION: Lien on Fund.** When the money, assessed as a benefit in a condemnation proceeding, is paid into court, it represents and stands in the place of the land condemned, and the claimants thereto thereafter have the same right to and interest in the money that they previously had in the land.

2. ———: ———: **Prior Assessment: Recovery.** Where the benefit assessed to plaintiffs had been paid into court for them, in one condemnation of their land wholly taken for a public park, a prior assessment charged against the same land in another proceeding for the establishment of a parkway, is a lien on the money paid into court for the land from the time it was so paid; and so much of the money so paid in as plaintiffs were required by their prior proceeding to pay, cannot be recovered by them, but it can be retained for those entitled to it.

3. ———: ———: **On Register.** A lien on money paid into court for the benefit of whoever is entitled to it can be enforced by the court in whose register the fund was deposited.

4. ———: ———: **Abatement: Another Use.** Because years after the assessment was made on the land that land was wholly appropriated to another public use, the fund for that appropriation being paid into court, is no reason why the lien of the assessment, which was first on the land, abated on the money which paid for the land.

Transferred from Kansas City Court of Appeals.

REVERSED AND REMANDED.

*Edwin C. Meservey, William A. Knotts* and *Ed E. Yates* for appellant.

(1)    In a proceeding to condemn lands for public use, the title to the property remains in the owner, until the assessed damages are paid to the owner, or into court for the person entitled thereto.    Ross v.

Kendall, 183 Mo. 347; Kansas City v. Ward, 134 Mo. 172; Thompson v. Railroad, 110 Mo. 147; State ex rel. v. Lubke, 15 Mo. App. 152; Bradley v. Railroad, 91 Mo. 493; State ex rel v. Hug, 44 Mo. 116; Provolt v. Railroad, 57 Mo. 256; Green v. Railroad, 82 Mo. 653; Railroad v. Baker, 102 Mo. 553; Kansas City Charter, art. 7, sec. 7; art. 10, sec. 28; Revised Ordinances Kansas City, art. 3, cap. 14, pp. 492-4.    (2) All liens and incumbrances against lands condemned for public use follow the money assessed as damages for the property taken, and are charges against the fund paid into court for the benefit of persons entitled thereto, in the same manner as they were against the land, and it devolves upon the court to ascertain who is entitled thereto.    Ross v. Kendall, supra; Kansas City Charter, supra; Thompson v. Railroad, 110 Mo. 163; City of Cleveland v. Wick, 18 Ohio St., 304; People ex rel v. Brooklyn, 4 N. Y. 419.

*Scarritt, Griffith & Jones* for respondents.

(1)    The equities of this case are with respondents.    The tract of land owned by respondents has been condemned in this proceeding, which is known as Spring Valley Park condemnation; the value of which land was fixed by the condemnation jury at $8,000.    Of this sum Kansas City has deposited $350 in the circuit court for respondents, or whoever may be lawfully entitled thereto.    Kansas City by its pleadings in that condemnation proceeding asserted that respondents were the sole owners of the tract of land in question.    Kansas City claims this fund or part of it, because an assessment of $301.48 payable in twenty annual installments appears to have been levied against this tract of land as benefits by reason of the condemnation of the South Paseo Extension Parkway.    It is an undisputed fact that the lands embraced in the South Paseo Extension have been

condemned and paid for by Kansas City, but they were not paid for, nor did Kansas City have the right of possession thereto, until February 12, 1903. Park certificates were sold as a means of raising the money applied to that purpose. The city is in no wise personally liable on those park certificates. Charter, art. 10, sec. 24, p. 184. (2) The jury did not take into consideration in appraising the value of respondent's land the alleged assessment for the South Paseo Extension Parkway. The validity of that assessment was at that time in question upon appeals prosecuted by various parties. The Kansas City charter provides in respect to such condemnation proceedings (sec. 18, art. 10, p. 180): "In case of appeal the judgment shall stand suspended until the appeal is disposed of." There was no South Paseo Extension Parkway in existence at the time the value of respondent's land was determined. The alleged assessment was at most a paper transaction, subject to be discontinued by ordinance or by successful attack upon appeal. For the trial court to have allowed the jury to take that suspended judgment into consideration in determining the value of respondent's land would have been to allow them to speculate upon a contingency. It would have required them to weigh the uncertainty and probability of the common council passing an ordinance to repeal the parkway scheme, and to guess upon the result of a trial in the appellate court. Consequential damages are not permitted in condemnation suits. City of Springfield v. Schmook, 68 Mo. 397. The measure of damages in such case is the fair and reasonable value of the land taken at the time of the assessment. Jamison v. City of Springfield, 53 Mo. 232. To permit respondent's property —their land, or the money that stands in the place of the land—to be consumed to discharge premature and technical liens for public improvements that are not

in existence and cannot be contemplated or taken into consideration by the jury at the time they fix the value of the condemned land is to take the property of a citizen without a hearing; it is to deprive a person of his property without due process of law; it is to contravene the fundamental principle of justice and law written in the Bill of Rights.    (3)  The decision in Ross v. Kendall, 183 Mo. 347, is a different case from the one at bar.    City of Clinton ex rel. v. Henry Co., 115 Mo. 569.

GANTT, J.—This is an action on the part of Elizzie W. Buchanan and Bettie P. Turner, commenced in the circuit court of Jackson county on the 24th day of June, 1903, to obtain an order on the clerk of the said court to pay over to them a certain fund of $350, which had been deposited with him by order of the court for the use of the petitioners or whoever might be entitled thereto, being a part of the certain sum of $8,000 which had been adjudged to the said plaintiffs for a certain tract of land that had been taken and condemned for public use as a park by Kansas City under ordinance 18,269 of Kansas City.    It appears by the petition of the plaintiffs that a proceeding to condemn a parkway in South Park District in Kansas City, Missouri, was instituted on the 12th day of December, 1899; that under this proceeding the property in controversy herein was assessed and taxed, and the fund representing such assessment and tax was afterwards paid into court.    As alleged in the petition, a proceeding was instituted on the 11th day of March, 1902, to open and establish a park in said South Park District, under which latter proceeding the property described in the petition was condemned and taken, and the title thereof subsequently confirmed and vested in the city.    The petition alleges that the earlier proceeding to open and establish a parkway,

which is known as the South Paseo Extension, was
carried through the court to a conclusion thereof and
the property of respondents assessed for benefits
therefor, and the tax in controversy to-wit, $301.48,
represented by the fund paid into court, apportioned
against the property described in said petition. That
the latter proceeding was for establishing a park in
South Park District known as Spring Valley Park. In
the latter proceeding the value of the property was
assessed at $8,000 of which $7,650 was paid to the
plaintiffs herein, and the balance of $350 was paid into
court on account of the claim of the defendant, Kan-
sas City, that it should be applied to the payment of
the South Paseo Extension park tax. After the pay-
ment of the said fund into court, the plaintiffs filed
their said intervening petition in said cause asking the
court to direct the clerk to pay the said fund to them.
Kansas City filed its demurrer to said petition, alleg-
ing as grounds therefor that the petition did not state
facts sufficient to constitute a cause of action and that
the petition was otherwise insufficient in law. This
demurrer was heard and overruled by the circuit court,
and Kansas City refusing to plead further and elect-
ing to stand upon its demurrer, final judgment was
rendered in favor of the plaintiffs, and from that judg-
ment Kansas City in due form appealed and the court
allowed the appeal to the Kansas City Court of Ap-
peals, and that court has certified the appeal to this
court on the ground that the cause involves the con-
struction of sections 20, 21 and 30 of the Constitution
of Missouri and the 14th amendment of the Constitu-
tion of the United States.

I.    The only question before this court is whether
or not the petition of the plaintiffs states facts suf-
ficient to sustain the order and judgment of the cir-
cuit court awarding them the fund of $350. It ap-
pears from the petition that prior to the commence-

ment of the condemnation proceeding under ordinance
18,269 to establish a park in the South Park District
in Kansas City, Missouri, which is known as Spring
Valley Park, on the 8th of October, 1901, another pro-
ceeding had been begun, to-wit, a condemnation pro-
ceeding commonly known as the South Paseo Exten-
sion, whereby the tract of land belonging to the plain-
tiffs and referred to as tract number 93 in said pro-
ceeding, was assessed and charged with $301.48 payable
in twenty annual installments, to pay, in part, the
purchase price of the parkway known as the South
Paseo Extension, the first installment of which became
due and payable on the 31st of May, 1903. It appears
that the verdict in this last-named proceeding was filed
and confirmed on September 14, 1901, and that mo-
tions for new trial and in arrest of judgment were filed
by various parties in said proceeding which were over-
ruled and an appeal duly prosecuted to this court;
that afterwards the judgment of said circuit court was
affirmed on or about June 20, 1902, and that none of
the assessments for benefits in the said South Paseo
Extension proceeding were paid until after the affirm-
ance of the judgment in this court. It also appears
that the ordinance to establish the Spring Valley
Park was approved October 8, 1901, at which time the
petitioners were the sole owners of the said tract, No.
93, mentioned and described in the South Paseo Ex-
tension proceeding. It also appears that the condem-
nation proceeding to condemn the Spring Valley Park
was commenced in the circuit court under the charter
of Kansas City on the 11th of March, 1902, and notice
of the said proceeding was given to all persons con-
cerned, and the 19th of April, 1902, was the day fixed
for the impaneling of the jury to ascertain the com-
pensation for the property to be taken or condemned
under said ordinance and the amount of benefits, if
any, to be assessed against the property within the

benefit district; that a jury was impaneled in said cause and instructed to view the lands affected on April 25, 1902, and that thereafter the jury filed their award in said cause and assessed the value of the said tract number 93 in favor of the petitioners at $8,000 and of that sum Kansas City on June 12, 1903, deposited with the clerk of the circuit court the sum of $350 for the use of the petitioners or for the use of whoever might be entitled thereto as the court might order. Section 18 of article 10 of the Kansas City charter provided that during the time of the appeal from the assessments in the South Paseo Extension proceeding the judgment should be "suspended until the appeal was disposed of." By reference to the dates in the petition, therefore, it appears that while the judgment in the Paseo Extension case was suspended by the appeals the Spring Valley Park case was tried.

The insistence of the plaintiffs is that although the condemnation proceeding to condemn the parkway for the South Paseo Extension had been commenced in the circuit court pursuant to the charter and had ripened into a verdict assessing the plaintiffs' tract number 93 with benefits to the amount of $301.48 and this verdict had been confirmed on September 14, 1901, and this judgment afterwards affirmed in this court, June 20, 1902, that verdict and judgment was not a lien upon their said lands because they say Kansas City had not paid for and was not entitled to the possession of said Paseo Extension until February 12, 1903. On the other hand, it is the contention of the city that both at the time of the commencement of the Spring Valley condemnation proceeding and at the time of the payment of the money into court, the special assessment tax for the Paseo Extension parkway was a lien on the tract number 93 designated in said proceeding, and that under the decision of this court

in Ross v. Gates, 183 Mo. 338, this lien continued against the fund adjudged to the plaintiffs in the Spring Valley Park proceeding in lieu of their lands which were taken by that proceeding. That the change of the form of the *res* does not change the rights of the owner and the lienor.

In Ross v. Gates, 183 Mo. l. c. 347, this exact point was in judgment in this court. In that case, as in this, it was insisted that while the contractor might have had a lien on the land he would have no right to the fund in court which represented the land in a condemnation proceeding. But this court said in that case, "When the money was paid into court, it represented, and stood in place of, the land condemned, and the claimants had the same right to and interest in the money that they had in the land."

It is to be noted that plaintiffs plead the condemnation proceeding in the South Paseo Extension and the assessment of the benefits against their tract of land No. 93 therein and that the verdict was filed and confirmed September 14, 1901. By the charter of Kansas City "the said assessments for benefits are a lien from the date of the taking effect of the ordinance in pursuance of which assessments are made and said proceedings instituted and attach to the several lots or parcels of land so assessed and this lien continues until said assessment is paid or collected in full." [Sec. 20, art. 10, Charter of Kansas City, 1889.] There is no allegation in plaintiffs' petition assailing the regularity or validity of the assessment against plaintiffs' property in the South Paseo Extension condemnation proceeding and it must be assumed it was entirely valid. It is true it is now asserted in the brief of plaintiffs that said section 20 of article 10 of the charter is unconstitutional under the Federal Constitution because a denial of due process of law, and section 53 of article 4 of the Constitution of Mis-

souri, but conceding for argument's sake, without so deciding, that the making the passage of the ordinance the beginning of the lien might render it obnoxious to the constitutional provisions invoked by plaintiffs, still it remains true that the proceedings to condemn the parkway for the South Paseo Extension had been commenced and had ripened into a verdict and judgment on September 14, 1901, after the notice to all parties, and this court, in Ross v. Gates, held that the judgment related to the institution of the suit. Upon what was it a lien? Not upon property of the city, because under the charter and the Constitution of this State the title to plaintiffs' tract number 93 still remained in them until the payment of the award for the condemnation thereof under the Spring Valley Park condemnation proceeding. In Kansas City v. Ward, 134 Mo. l. c. 183, it was ruled by this court that "the Constitution leaves neither to the Legislature of the State nor of any municipality, nor to the courts, the power to say when compensation for private property taken for public use shall be paid. It must be paid before the property is taken, and the preliminary proceedings, by which the amount to be paid is ascertained in the manner required by law, amount to nothing, unless they culminate in actual payment, and until they do so culminate, the owner's rights remain unimpaired;" and in Ross v. Gates, 183 Mo. 338, the same principle was announced, this court saying, "The title to the land was duly vested in Gates and Kendall until it was divested by the judgment in condemnation." Until June 12, 1903, then, the plaintiffs were the owners of the tract No. 93, since according to their petition it had not been paid for prior to that time, and during all the time from the judgment confirming the verdict, to-wit, from September 14, 1901, until June 12, 1903, plaintiffs' said lands were bound by the lien of the South Paseo Extension special as-

sessment, and when, by the payment of the $7,650 to plaintiffs and the remaining $350 of the award into court for plaintiffs or whoever should be entitled thereto, the title vested in the city for a park, the lien continued on the money paid into court as ruled in Ross v. Gates, 183 Mo. 338; and this is the general doctrine. [2 Lewis on Eminent Domain, secs. 629 and 629a; Thompson v. Railroad, 110 Mo. l. c. 163; Railroad v. Brown, 12 L. R. A. 84.]

That this lien could be enforced by the judgment of the court in whose register the fund was deposited, we have no doubt whatever. This was settled, and rightly we think, in Ross v. Gates, 183 Mo. 338.

We can see no valid reason for holding that the special assessment for benefits which afterwards culminated in a judgment has abated. Surely it cannot upon any recognized legal or equitable principle be held to abate *ipso facto*, because years afterwards the lands upon which it is a lien are wholly appropriated to another public use, since as we have seen the lien follows the fund paid into court and binds it just as it did the land. We think the circuit court erred in overruling the demurrer. The demurrer should have been sustained and the $301.48 awarded to Kansas City for the use of the special fund for which the benefits were assessed.

Judgment reversed and cause remanded.

*Fox, P. J.,* and *Burgess, J.,* concur.