**Margaret L. LANDES, Appellant,**

v.

**CITY OF KANSAS CITY, Missouri, et al., Respondents.**

**No. WD 32808.**

Missouri Court of Appeals,
Western District.

June 1, 1982.

David P. Hargrave, Kansas City, for appellant.

Harry P. Thomson, G. Stephen Long, Shugart, Thomson & Kilroy, James C. Bowers, Jr., Asst. City Atty., Kansas City, for respondents.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Margaret Landes sought to enjoin the City of Kansas City and its officers from enforcing the zoning ordinance limiting her property to occupancy by two families. She also sought, by way of mandamus, to compel the City to issue a certificate of occupancy to replace one alleged to have been lost or destroyed. The court entered summary judgment in favor of the City on both counts and Landes appeals. Decisive to this appeal is the fact that Landes' claims are barred by res judicata. Affirmed.

In her petition, filed in November, 1979, Landes alleged that she owned the property at 1124 Ward Parkway and that the house located there was built in 1922 to accommodate seven apartment units. She alleged that she filed an affidavit of nonconforming use for three or more apartments with the City in 1955, and a certificate of occupancy was issued to an attorney representing her, but that such certificate had been lost or destroyed.

The petition further alleged that in 1975 a neighbor complained to the City about the number of apartment units in the Landes house, and, at the request of the City, she filed a new affidavit that she had a lawful nonconforming use for six apartment units. On the filing of this affidavit, the City sent notice to adjoining owners of the contents of the affidavit, and, on receiving two counter-affidavits, the City's codes administrator refused to issue a certificate of occupancy for the claimed nonconforming use. The petition further alleged that during the twenty year period between 1955 and 1975, she had spent substantial sums to renovate her house for the continuation of the six apartment unit use. The petition alleged that a complaint had been filed against her in municipal court for violating the zoning ordinance, which allowed only two living units in the Landes house. The prayer in Count I was that the City and its officers be permanently enjoined from interfering with her legal nonconforming use of six apartment units in her house.

Count II adopted the same allegations and prayed that a writ of mandamus be issued to compel the City to issue a certificate of occupancy for the nonconforming use of six apartment units to replace the certificate alleged to have been issued in 1955.

Although not pleaded in Landes' petition, the record on this appeal reveals that after the City refused to issue a certificate of occupancy for six apartment units in 1975, Landes appealed that decision to the Board of Adjustment. The record before the Board of Adjustment on that appeal is a part of the record in this case and demonstrates that the question presented to the Board was whether or not Landes had a valid nonconforming use of six or seven apartment units in her house. The Board received evidence on this question from both sides and decided that Landes had not demonstrated that the house had been continuously used for six or seven apartment units from a time prior to June 4, 1923, when the zoning ordinance of Kansas City was originally adopted and which zoned this house for a maximum of two living units.

In affirming the decision of the codes administrator that Landes was not entitled to a certificate of occupancy for six or seven apartment units, the Board found that a certificate of occupancy could not be issued because a legal nonconforming use had not been established.

Following the decision by the Board, Landes filed a petition for writ of certiorari in the Circuit Court of Jackson County to review the decision of the Board. In the petition Landes stated that the Board of Adjustment had held that her use of 1124 Ward Parkway was not a legal nonconforming use. She alleged this decision was illegal and arbitrary because it was not supported by competent and substantial evidence.

On December 7, 1977, the Circuit Court of Jackson County affirmed the decision of the Board, and in its judgment held that the decision was supported by competent and substantial evidence. The court also stated that it was doubtful if there was any evidence of a nonconforming use. No appeal was taken from that judgment, and it, of course, became final.

In the case sub judice the City filed a motion for summary judgment in the circuit court and alleged that the judgment of the circuit court in 1977 affirming the decision of the Board of Adjustment was res judicata to the suit filed by Landes. The court entered summary judgment in favor of the City "because the unopposed pleading, affidavit and exhibits filed show that there is no genuine issue as to any material fact and that defendants are entitled to a judgment as a matter of law because it affirmatively appears that the issues presented in this case were previously litigated to a conclusion by these same parties ...."

From the record before the circuit court in this case, and before this court on this appeal, it is plain that the issue presented to the Board of Adjustment in 1975 was whether or not Landes had established a legal nonconforming use of her house at 1124 Ward Parkway for six or seven apartment units. The Board decided that a non-conforming use had not been shown and the circuit court affirmed that decision.

In that circumstance there can be no doubt that the same parties as involved in the present suit have already fully litigated the question of whether or not a lawful nonconforming use has been established for Landes' house to be occupied by six or seven apartments. That decision was adverse to Landes and required her to conform to the zoning which covered her house and limited it to a use for not more than two apartments. This presents a classic case for the application of the doctrine of res judicata.

In *Jackson v. Hartford Accident and Indemnity Company*, 484 S.W.2d 315, 321[1, 2] (Mo.1972) the court quoted the familiar rule of res judicata as follows:

> " ' "It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief." ' *Butler v. Manley*, Mo.App., 416 S.W.2d 680, 682[1, 2]. And the test of res judicata is 'whether there is an identity of issues; that a "former judgment is conclusive in a second suit between the same parties where the same legal right as that involved in the former suit comes again in issue, although the second suit is upon a different cause of action." ' *Whiteley v. Whiteley*, Mo.App., 325 S.W.2d 502, 505[3]."

The rule of res judicata was applied in a case with remarkably similar facts in *Veal v. City of St. Louis*, 365 Mo. 386, 289 S.W.2d 7 (1956). In *Veal* the landowner had sought to establish a nonconforming use but the Board of Adjustment had decided against her contention and that decision was affirmed on appeal by both the circuit court and the court of appeals. She thereafter brought a suit seeking injunctive relief and a declaratory judgment that she had the right to operate a funeral home on her property. In affirming a judgment against the landowner, the court stated at page 13, 365 Mo. 386:

"As we see it, the ultimate issue decided by the Board of Adjustment was the right to use plaintiff's building as a funeral establishment, and the underlying or supporting issues were whether plaintiff had acquired a vested right to such use by making substantial expenditures in reliance on the permit, and whether plaintiff had established a nonconforming use prior to the effective date of the new comprehensive Zoning Ordinance."

The issues decided by the Board in *Veal* are identical to the issues decided by the Board in 1975 adverse to Landes. The ultimate issue decided by the Board was the right of Landes to use her house for six or seven apartment units and the underlying or supporting issue was whether or not she had established a non-conforming use. Both of these issues were found against Landes. In *Veal* the court held that the decision of the Board of Adjustment, as affirmed on appeal, was conclusive on the landowner. So it is in this case. The decision of the circuit court in a suit between the same parties involving the same issues became final and conclusive on Landes and may not be relitigated.

Landes seeks to avoid the bar of res judicata by contending that the existence of her nonconforming use had been decided in 1955 and was not decided by the Board of Adjustment in 1975. This contention flies in the face of the record which clearly shows that the very matter litigated before the Board in 1975 was whether or not Landes was entitled to a certificate of occupancy for six or seven units based on a valid nonconforming use which had existed continuously from a time prior to June 4, 1923. The Board decided that very question adversely to Landes, and that decision was affirmed by the circuit court. Landes also makes the inconsistent argument that the decision of the Board denying her nonconforming use was an attempt to decide an issue foreign to the issues placed before the Board. As already stated, that was the very issue presented to and decided by the Board in 1975.

The judgment is affirmed.

All concur.